AO 106 (Rev. 04/10) Application for a Search Warrant

**SEALED**

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

**FILED**

MAR 16 2020

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY
DEPUTY CLERK

In the Matter of the Search of

A. The residence located at **2039 Tennessee St, Vallejo, California;**

B. The person of **Joseph Gage McCready TOMSON**, DOB: \*\*-\*\*-1990, California Driver's License #\*\*\*\*5212;

C. Cellular telephones assigned call numbers **(707) 980-8104** and **510-478-4899** used by **Joseph Gage McCready TOMSON**, and any cellular telephone located on his person or under his control; and

D. **Blue 2004 Toyota Prius with License Plate CA 5JHS181**

Case No.

2:20 - SW 0249      DB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 846 and 841(a)(1) | conspiracy to distribute and possess with intent to distribute heroin, methamphetamine and opioids; |
| 18 U.S.C. § 922(a)(1) | unlawful dealing and manufacture of firearms; |
| 18 U.S.C. § 922(o) | possession of a machinegun |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☑ Delayed notice ____30____ days (give exact ending date if more than 30 _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____

_____
*Applicant's signature*

James Bonanno, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **3-16-20**     _____

_____
*Judge's signature*

City and state:   Sacramento, California     Deborah Barnes, U.S. Magistrate Judge
*Printed name and title*

## **AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Special Agent James Bonanno of the DEA, being duly sworn, depose and state
as follows:

### **Background and Expertise**

1.  I am a Special Agent with the Drug Enforcement Administration ("DEA"),
    Sacramento District Office, and have been so employed since 2018.  As such, I am a
    "federal law enforcement officer" within the meaning of Federal Rule of Criminal
    Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing criminal
    laws and duly authorized by the Attorney General to request a search warrant.  I am
    responsible for conducting investigations into narcotics traffickers and assisting in
    their apprehension.  These investigations are conducted both in an undercover and
    overt capacity and involve electronic surveillance, cellphone-location evidence,
    confidential informants, and the execution of search and arrest warrants.  Upon being
    hired by DEA, I completed a four-month DEA Basic Agent School at Quantico,
    Virginia.  After completing DEA Basic Agent School, I reported to my current
    assignment at the Sacramento District Office, Enforcement Group 2.

2.  I was trained as a DEA Special Agent at the DEA Academy, Quantico, Virginia.
    During my training, I received special training in the Controlled Substance Act, Title
    21 United States Code, including but not limited to, Sections 841(a)(1) and 846,
    Controlled Substance Violations and Conspiracy to Commit Controlled Substance
    Violations, respectively.  I have received special training regarding criminal
    organizations engaged in conspiracies to manufacture and/or possess with intent to
    distribute methamphetamine, cocaine, cocaine base, heroin, marijuana, MDMA, and
    other dangerous drugs prohibited by law.  I received further training in search and
    seizure law, financial investigations and money laundering techniques, and many
    other facets of drug law enforcement.  I have also spoken to and worked with
    experienced federal, state, and municipal agents and narcotics officers regarding the
    methods and means employed by drug manufacturers and drug traffickers, including
    the use of express carriers and the U.S. Postal system to distribute drugs.

3.  During the course of my employment as a DEA Special Agent, I have participated in
    numerous criminal investigations.  I have participated in executing numerous Federal
    and State search warrants involving the aforementioned listed controlled substances,
    the seizure of narcotics-related records and other types of evidence that document the
    activities of criminal organizations in both the manufacturing and distribution of
    controlled substances.  To successfully conduct these investigations, I have utilized a
    variety of investigative techniques and resources, including physical and electronic
    surveillance, various types of infiltration, including undercover agents, informants,
    and cooperating sources.  Through these investigations, my training and experience,
    and conversations with other agents and law enforcement personnel, I am familiar
    with the methods used by drug traffickers to smuggle and safeguard controlled
    substances, to distribute, manufacture, and transport controlled substances, and to
    collect and launder related proceeds.

1

## Scope of Requested Search Warrant

4.  This Affidavit is submitted in support of a search warrant to search the following:

    A.  The residence located at **2039 Tennessee St, Vallejo, California;**

    B.  The person of **Joseph Gage McCready TOMSON,** DOB: \*\*-\*\*-1990, California Driver's License #\*\*\*\*5212;

    C.  Cellular telephones **(707) 980-8104 and 510-478-4899** used by **Joseph Gage McCready TOMSON**, and any cellular telephone located on his person or under his control;

    D.  **Blue 2004 Toyota Prius with License Plate CA 5JHS181** and all vehicles over which any owner, occupant, or resident of the premises has dominion and control, as determined by agent's observation of such person operating or accessing the vehicle; DMV records showing ownership or use of the vehicle; witness statements establishing ownership or use of the vehicle; or car keys to operate the vehicle found in the actual or constructive possession of such person.

5.  Based on the facts set forth below, I believe that Joseph Gage McCready TOMSON is a heroin, methamphetamine, and opioids trafficker who is currently involved in the distribution of large amounts of these substances and is also dealing in firearms and in possession of machineguns.  I believe that TOMSON is storing and distributing heroin, methamphetamine, opioids and firearms from the residence located at 2039 Tennessee St, Vallejo, California, which TOMSON where I believe he currently resides.  I also believe that TOMSON is using cellular telephone (707) 980-8104 to facilitate his drug trafficking activities. I also believe TOMSON is using the Blue 2004 Toyota Prius with License Plate CA 5JHS181 in order to facilitate his drug trafficking activities. This Affidavit therefore requests authority to search the locations described in Attachment A in order to locate and seize the items described in Attachment B as evidence and instrumentalities of violations of 21 U.S.C. §§ 846 and 841(a)(1) – conspiracy to distribute and possess with intent to distribute heroin, methamphetamine and opioids; 18 U.S.C. § 922(a)(1) – unlawful dealing and manufacture of firearms; and 18 U.S.C. § 922(o) – possession of a machinegun.

## Statement of Probable Cause

## Initial Confidential Source Information Received January of 2020 that Joseph TOMSON is an Illegal Firearms and Drug Trafficker

6.  In early 2020, I spoke with a Confidential Source (CS) regarding the heroin, methamphetamine and opioids trafficking activities of an individual subsequently identified as **Joseph Gage McCready TOMSON**.

2

7. It should be noted that the CS was providing me with information solely in hopes of receiving financial compensation. The CS has a criminal history of felony convictions for theft and firearms offenses. The CS has provided other federal law enforcement officers with assistance in the past including but not limited to providing intelligence, making controlled purchases of narcotics and firearms, and introducing undercover agents to purchase narcotics. The CS's information has previously been used in state and federal search warrant affidavits leading to the seizure of large quantities of narcotics and firearms and the successful prosecution of individuals for federal criminal offenses. I have never found the CS to be false or misleading, and the CS's descriptions of drugs and drug dealing have been entirely consistent with my own training and experience in this area. For these reasons, I consider the CS reliable. The CS provided the following information.

8. The CS stated that in late 2019, he/she had been introduced by a mutual associate to an individual subsequently identified by the CS from a California Department of Motor Vehicles (DMV) photograph as **Joseph Gage McCready TOMSON**, who claimed to live in Fairfield, California and who distributed drugs and guns in the Solano County area.

9. The CS had been in telephonic and social media contact with TOMSON in December 2019 and January 2020. During these contacts TOMSON related that he sold firearms, to include pistols and rifles, which he had converted to fully automatic firing as well as high capacity magazines to go with these firearms. TOMSON displayed social media photographs of these items, which the CS observed on more than one occasion and TOMSON quoted the CS prices for fully automatic weapons during direct telephone calls. TOMSON described the various types of firearms he had available and what he anticipated having available, and he indicated it was more cost effective for his customers to purchase the firearms already fully converted to automatic instead of buying the conversion kits and parts from him separately.

10. The CS further explained that TOMSON had posted digital images to TOMSON's Instagram account, "btmovement707" that illustrated TOMSON's drug distributing activity. The CS explained that the images included a photograph of what appeared to the CS as black tar heroin as well as a photograph which appeared to be pound quantities of crystal methamphetamine. TOMSON had indicated to the CS that he had heroin available for sale if the CS was interested.

11. The CS related that TOMSON was at that time using cellular telephone **707-980-8104** to conduct his illegal firearms and drug trafficking activities. Subsequent inquiries revealed that service for this cellphone was subscribed in the name of TOMSON.

12. Law enforcement database inquiries revealed that TOMSON has been arrested on multiple occasions for multiple felony charges including a charge for possession of concentrated cannabis in 2014, which was dismissed. TOMSON is currently on probation for misdemeanor alcohol related reckless driving in 2018.

**Information from Fairfield Police Department in January 2020 regarding
TOMSON's recent alleged assault with a firearm.**

13. In January 2020, I spoke with Detective Rob Piro of the Fairfield Police Department.
Detective Piro related to me that he was investigating TOMSON regarding an alleged
firearm assault incident involving TOMSON which had recently occurred in
Fairfield. Detective Piro told me that he has reason to believe based on the
investigation that TOMSON had engaged in a physical confrontation with an
individual in a Fairfield bar on December 25, 2019. During this fight, TOMSON
allegedly assaulted an individual, brandished a firearm at the individual and then
proceeded to fire the weapon into the ceiling of the establishment and subsequently
flee from the scene. Detective Piro also informed me that following this incident
Detectives had attempted to locate TOMSON at his listed resident address with the
California DMV in Fairfield but they were unsuccessful, as it appeared he no longer
resided at the home.

**Identification of TOMSON's current residence and TOMSON's statements
regarding travel to Mexico to meet drug source.**

14. On January 6, 2020, the Honorable Magistrate Judge Deborah Barnes authorized a
warrant to collect GPS ping data from telephone number **707-980-8104** subscribed to
and used by Joseph TOMSON.

15. In January 2020, I reviewed the GPS ping location data for this telephone. The data
revealed that the phone was located regularly within a specific approximate 1,200
meter radius in the City of Vallejo. I spoke with Detective Kevin Barreto and Sgt.
Jerome Bautista of the Vallejo Police Department who searched the area within this
radius and located a Blue 2004 Toyota Prius with California License Plate #5JHS181,
parked in front of the residence at **2039 Tennessee St, Vallejo, California**.
Detectives continued to observe this vehicle parked at this location repeatedly during
January 2020.

16. Prior inquiries with the DMV revealed that the Blue 2004 Toyota Prius with
California License Plate #5JHS181 was registered to TOMSON's known girlfriend,
Samantha Kay RODRIGUEZ, at 813 Warbler Way, Fairfield, California, TOMSON's
listed address with DMV. Detective Piro confirmed to me that he had determined
that prior to the firearm assault incident described above, TOMSON lived with
RODRIGUEZ at 813 Warbler Way, Fairfield, California and TOMSON had used this
same Toyota Prius and had been cited operating the vehicle. Based upon TOMSON's
cellphone locator information showing the telephone regularly in the vicinity of 2039
Tennessee Street, Vallejo, California and the regular observation of his known
vehicle in front of this address by the Vallejo PD Officers at different hours of the
day, I believed that TOMSON had relocated following the firearm assault incident
and that he was now living at this home.

17. In late January 2020, I spoke with the CS who informed me that the CS had spoken with TOMSON at 707-980-8104. TOMSON told the CS that he had a large amount of "China White," common slang for white powder heroin, which in recent years is also analyzed as being the synthetic opioid fentanyl, for sale and that he could sell the CS Glock pistols for approximately $700 per weapon and converted automatic pistols for approximately $1,200 per weapon.

18. During this same period of time, the CS telephonically contacted TOMSON and attempted to arrange for TOMSON to deliver a sample of the powder heroin. However, TOMSON said he could not deliver the drugs himself but could have his girlfriend deliver the drugs for him. The CS also engaged in recorded narcotics-related text messages with TOMSON, in which TOMSON agreed to meet with the CS. The messages were as follows:

> CS: "I'll come on Tuesday bro if that's good"
> TOMSON: "Yup"
> CS: "Iz it good to go get that tomorrow bro"
> CS: "Bro Whatsup is it good to grab that I'm going to be out there like 1"
> CS: "Brody Wsp you think yo girl can give me that sample tomorrow"

19. Just prior to January 22, 2020, TOMSON informed the CS that he was going to be meeting with his own Mexican drug sources of supply to obtain a large amount of drugs and that he had to travel south and would be busy but he again offered to have his girlfriend meet the CS to deliver the heroin sample.

**TOMSON crosses into Mexico in the Toyota Prius.   Narcotics detection canine Alerts on car upon TOMSON's return and unidentified pills seized from vehicle.**

20. On January 22, 2020, a review of TOMSON's GPS ping data revealed that TOMSON's telephone had traveled south from the vicinity of 2039 Tennessee Street, Vallejo, California through the Central Valley and Southern California and ultimately approached the Calexico-Mexicali border port of entry. Location information subsequently ceased to produce information, as the telephone appeared to have traveled into Mexico. I learned that the license plate for the blue Toyota Prius had been recorded by the law enforcement license plate reading system, which indicated the vehicle headed south at approximately the same period and in the same location as the phone locator information travelling south towards Imperial County California. I contacted Homeland Security Investigations Group Supervisor Timothy Kotman to have the aforementioned Toyota Prius contacted and examined upon reentry into the United States and to identify the occupants.

21. On January 24, 2020, I was contacted by Customs and Border Patrol Supervisor Savala at the Calexico Port of Entry. I was informed that the blue Toyota Prius had reentered the United States at the Calexico port of entry with TOMSON driving and a

second male occupant identified by Supervisor Savala as Shane TILLING. Supervisor Savala informed me that a narcotics trained K9 had a strong positive alert to the presence of narcotics near the wheel well of the vehicle, at which time CBP officers discovered what they described as "anxiety pills" hidden within the area where the K9 alerted. Supervisor Savala then informed me that the Toyota Prius was searched with an X-ray machine with negative results. Supervisor Savala seized the "anxiety pills" and allowed the two males to depart the port of entry in the Toyota Prius. Agents are still attempting to determine which types of "anxiety pills" were seized, whether they were counterfeit pills or pharmaceutical pills, and to have them analyzed.

22. I subsequently learned through inquiries with the Thomas and Reuters CLEAR database that Shane TILLING (DOB: **-**-1995) listed 2039 Tennessee St, Vallejo, California as a residence since April 19, 2019, according to utility, credit and household listings. Law enforcement databases revealed that TILLING was charged, but not convicted, in 2016 for felony willful discharge of a firearm and assault with a firearm on a person.

### Additional information confirming that TOMSON is currently residing at 2039 Tennessee St, Vallejo, California and observations of suspected hand-to-hand drug transaction

23. On January 30, 2020, I conducted an address check at **2039 Tennessee St, Vallejo, California**. I observed a blue 2013 Toyota sedan with License Plate California 7DNN546 parked in the driveway. Inquiries with DMV revealed that this vehicle was registered to Joseph G McCready, Aka: Joseph Gage McCready TOMSON, at 813 Warbler Way, Fairfield, California. Shortly after I arrived, I observed a white Acura sedan arrive and park on the street in front of the residence. A male wearing a red sweatshirt exited the driver's seat and walked towards the front of the residence. I returned to this location approximately an hour after my initial observations and at this time I observed the same individual in the red sweatshirt and a white female wearing a black sweatshirt standing next to the open door of the driver's seat of the white Acura. I then observed the male and female blading their bodies toward the open door of the vehicle away from the street (*i.e.*, hiding what they were doing from public view); the male then quickly looked around and then both the male and female extended their arms out towards each other. From my training and experience and what I observed I believe I observed these individuals conducting a hand-to-hand drug transaction.

### Information regarding Joseph TOMSON from Vallejo Police Department CS in March 2020

24. On March 2, 2020, I received and reviewed a report from Detective Bautista that detailed a Vallejo Police Department Confidential Source (VPD CS) debriefing that occurred earlier that morning. I was informed by Sgt. Bautista that the VPD CS was

providing information for the sole purpose of receiving consideration for multiple state charges for which the VPD CS had just been arrested.

25. The VPD CS related that he/she was an associate of TOMSON who lived at **2039 Tennessee Street, Vallejo, California**. The VPD CS related that he/she had a reason for holding a grudge against TOMSON for various reasons including that TOMSON had allegedly assaulted the CS.

26. The VPD CS stated that an individual named Joe, tentatively identified by the VPD CS as TOMSON, lived at **2039 Tennessee St, Vallejo, California**. The VPD CS related that TOMSON bought unfinished Glock Pistol model receivers online, completed their construction and subsequently sold them on the street. The VPD CS confirmed TOMSON currently had in his possession two Glock 21s in .45 caliber ready to be sold. The VPD CS explained that TOMSON currently had "buckets" of unfinished firearms, but could not provide a specific number of weapons.

27. TOMSON is not licensed to manufacture or deal in firearms.

28. The VPD CS also stated that TOMSON had direct connections to the Sinaloa cartel and frequently purchased and facilitated the transportation of pound quantities of methamphetamine from Mexico. The VPD CS stated that recently, one of TOMSON's co-conspirators had lost a load of methamphetamine as it had been seized by law enforcement. The VPD CS stayed that due to this seizure, TOMSON only had approximately one pound of methamphetamine currently in his possession at the residence.

29. The VPD CS also stated that there were two other individuals who lived at the residence, a couple named Scott and Reina. The VPD CS stated that Scott possessed a gold plated, fully automatic AK47 rifle and had he/she seen Scott fire it in the fully-automatic setting previously and also noted the rifle had a selector switch with the fully automatic setting. The VPD CS stated that Scott kept the AK47 rifle underneath the mattress in Scott's bedroom, located on the second floor of the residence, and being the last room in the hallway to the left of the staircase.

30. The VPD CS also informed law enforcement that one of the residents in the residence participated in the theft of ATM machines in which the individual would steal ATMs from stores and transport them back to the residence.

31. Vallejo PD Officers traveled past **2039 Tennessee Street, Vallejo, California** immediately following the debriefing of the VPD CS and observed TOMSON's same blue Toyota Prius parked in the driveway.

7

**TOMSON posted drug and firearms pictures and made firearms-related calls in March 2020**

32. On March 4, 2020, I had a conversation with the DEA CS referred to above. During this conversation, the CS provided me with TOMSON's Instagram account. I inspected TOMSON's account, which displayed a large quantity of pictures displaying guns, illegal drugs, and large amounts of US currency.

33. Pictures of drug activity included a high quantity of photographs of oxycodone prescription pill bottles filled with what appears to be prescription pills. Also photographed were bottles of prescription alprazolam bottles filled with what appeared to be prescription pills. In various photographs and videos, I was able to see the name of the individual these prescriptions were written for and none of the bottles were prescribed for Joseph TOMSON. Some of these bottles included labeling from Veterans' Affairs. There were also pictures of Farmapram bottles and boxes, a Mexican pharmaceutical company that produces Alprazolam only available for legal purchase in Mexico. I believe based upon these photographs and the "anxiety pills" the CBP described having seized from TOMSON's vehicle at the border that TOMSON is actively involved in importing various pharmaceutical tablets for distribution in the United States.

34. There were also photographs and videos of Glock pistols, one of had a large extended high-capacity magazine and an additional Glock pistol with a tactical light affixed to the frame of the weapon. There was also a photograph of a large amount of US currency in various denominations and at the left side of the picture was a prescription drug bottle. Additionally, there was a photograph of a prescription drug bottle with a large quantity of hundred dollar bills of US currency behind the bottle.

35. The CS subsequently related to DEA Special Agent Brian Nehring that he/she contacted TOMSON via Instagram and TOMSON contacted the CS from cellular telephone **510-478-4899**. TOMSON told the CS that he currently had several fully automatic firearms for sale and was making more. TOMSON stated he had two particular fully-automatic machine pistols he had converted with accompanying high-capacity magazines and that he would sell them for prices between $1100 and $1400 each. The CS agreed to meet with TOMSON during the following week to purchase at least two weapons.

**Training and Experience Regarding Drug Trafficking and Drug Traffickers**

36. As a result of my experience and training, I have learned that traffickers who deal in various quantities of controlled substances, or those that assist in that venture, maintain and tend to retain accounts or records of those transactions. Such records detail amounts outstanding, owed, or expended, along with records tending to indicate the identity of co-conspirators. These records may be kept on paper or contained in memory calculators or computers. It is also my experience that these traffickers tend to keep these accounts and records in their residence and in the areas under their

control.  It is my training and experience, that in the case of drug dealers, evidence is likely to be found where the dealers live.  It is also my training and experience that where criminal activity is long-term or ongoing, equipment and records of the crime will be kept for some period of time.

37. Based upon my experience and training, I have learned that drug traffickers often place their assets in names other than their own to avoid detection of those assets by law enforcement and the Internal Revenue Service (IRS); that those persons are commonly family members, friends, and associates who accept title of assets to avoid discovery and detection; that traffickers also often place assets in the ownership of corporate entities to avoid detection by law enforcement agencies and although these assets are in other individual(s) or corporate names, the traffickers continue to use these assets and exercise dominion and control over them. Typically traffickers keep records of those registrations and transactions in their residence.

38. I have learned that large-scale drug traffickers often have on hand large amounts of United States currency in order to maintain and finance their ongoing business.  It has been my experience that drug traffickers often keep large sums of currency, caches of drugs, financial instruments, precious metals, jewelry, automobiles and other items of value and/or proceeds of drug transactions, including evidence of financial transactions related to obtaining, transferring, secreting or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances in their residence or in the areas under their control.

39. In my experience, traffickers commonly have in their possession, that is, on their person, at their residence and in the areas under their control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons.  Such firearms are used by drug violators to protect their illicit drug trafficking operations, and themselves against law enforcement and other drug violators because the illicit drug trade is an inherently dangerous illegal activity involving large amounts of valuable contraband and drug proceeds.  Such property may include, but is not limited to, narcotics and other dangerous drugs, jewelry, narcotic paraphernalia, books, records, ledgers and quantities of currency.

40. In my experience, traffickers commonly have in their possession, that is on their person, at their residences, and their vehicles, and in the areas under their control and which they have free and ready access to, drugs, including but not limited to in this case, cocaine and cocaine base, which they intend to distribute.  It is my experience that these drug traffickers commonly utilize these areas (vehicles, residences, properties, etc.) as locations to conceal their narcotics from law enforcement.

41. In my experience, drug traffickers may take or cause to be taken, photographs or videotapes of themselves, their associates, their property, and their product.  Such traffickers often maintain photographs and/or videotapes at their residence or in the areas under their control.

42. In my experience, large scale traffickers often maintain in their possession and at their residence fictitious identification, including but not limited to, driver's licenses, employment cards, insurance cards, social security cards, certificates of birth and passports which are obtained by the traffickers and utilized in an effort to prevent law enforcement identification of the traffickers and their drug trafficking activities.

43. In my experience, drug traffickers often use vehicles in which to transport and distribute controlled substances in facilitation of their trafficking activities. It has also been my experience that traffickers will also utilize vehicles as locations in which to store controlled substances prior to distribution.   During prior investigations, I have observed that drug traffickers will often utilize vehicles registered in the names of individuals other than themselves in an effort to avoid detection by law enforcement.

44. In addition, these traffickers tend to attempt to legitimize their assets by establishing domestic and foreign businesses, by creating shell corporations, by utilizing bank haven countries and attorneys specializing in drafting and establishing such entities employed to "launder" the proceeds derived from the distribution of controlled substances.

45. In establishing these entities, the traffickers often must travel to meetings in foreign countries as well as domestically. As a result of that travel, records are generated reflecting travel by commercial and private aircraft, Commercial Ocean and private vessels as well as common carrier(s).

46. Individuals involved in the distribution cocaine and cocaine base often make, or cause to be made, pictures, videos, movies, compact discs, floppy discs, or other such items which are or contain photographic or digital images in order to memorialize their narcotics distribution, use, possession, or any other activities surrounding their heroin, methamphetamine and opioid trafficking activities, and that such items often identify co-conspirators in their heroin, cocaine and cocaine base trafficking activities.

47. It has been my experience in the past, and particularly in this case, that when suspects utilize mobile telephones to communicate with cooperating individuals or undercover agents to set up the heroin, methamphetamine and opioid deals, records relating to these activities will be found stored in the cellular telephone.

48. I know that narcotics traffickers use mobile telephones to communicate with one another, either by voice or text message.  Mobile telephones preserve in their memory a history of incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other narcotics traffickers and the dates and times that they and/or the mobile telephone user dialed one another's telephones.  Mobile telephones also contain in their memory a telephone book.  This allows the user to store telephone numbers and other contact information; the information stored in a telephone used by a narcotics trafficker is evidence of the associations of the narcotics trafficker, some of which are related to his or her illegal business.  Mobile telephones also contain in their memory text messages sent, received, and drafted by

the mobile telephone user.  The text message history of a narcotics trafficker's mobile telephone can contain evidence of narcotics trafficking because it shows the communications or planned communications of a narcotics trafficker and the telephone numbers of those with whom the narcotics trafficker communicated or intended to communicate.  Mobile telephones also have a voicemail function that allows callers to leave messages when the telephone user does not answer.  Narcotics traffickers sometimes leave voice messages for each other and this is evidence both of their mutual association and possibly their joint criminal activity.  Mobile telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by a narcotics trafficker. Mobile telephones can also contain photographic data files, which can be evidence of criminal activity when the user was a narcotics trafficker who took pictures of evidence of crime.  Mobile telephone companies also store the data described in this paragraph on their own servers and associate the data with particular users' mobile telephones.

49. As described above and in **Attachments A** and **B**, this Affidavit seeks permission to search and seize things that are related to the heroin, methamphetamine, and opioid trafficking, firearms trafficking, and possession of machineguns by TOMSON and his co-conspirators, in whatever form such things are stored.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Even when a user deletes information from a device, it can sometimes be recovered with forensics tools.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

50. It is my opinion, based on my training and experience, and the training and experience of other law enforcement investigators to whom I have spoken, that the items listed in **Attachment B** are items most often associated with the distribution of controlled substances, including heroin, methamphetamine and opioids and trafficking of firearms, as well as the proceeds from such illegal operations.

51. The facts set forth in this Affidavit are known to me as a result of my personal participation in this investigation, through conversations with other agents and detectives who have participated in this investigation, and from reviewing official reports, documents, and other evidence obtained as a result of this investigation.  This Affidavit is not an exhaustive enumeration of the facts that I have learned during the course of this investigation but, instead, are facts that I believe support a finding of probable cause to search the requested locations.

52. Based on my experience and training, and after consulting with other law enforcement officers experienced in drug investigations, I know that individuals involved in drug dealing often maintain at their residences, vehicles, and their persons the items described in **Attachment B**.  Individuals involved in drug dealing also often maintain paraphernalia for packaging, weighing, cutting, testing, distributing, and identifying controlled substances.  Therefore, I am requesting authority to seize all the items listed in **Attachment B** to this Affidavit and incorporated here by reference.

**Request to Seal**

53. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation and safety of the agent and officers executing the search warrant.

**Conclusion**

54. In this case, the facts set forth in this Affidavit demonstrate probable cause to believe that the locations listed in **Attachment A** to this Affidavit contains evidence of a crime, contraband, fruits of a crime, and other items illegally possessed, property designed for use, intended for use, or used in committing a crime, specifically, **Joseph Gage McCready TOMSON** and his ongoing effort to distribute and possess with intent to distribute heroin, methamphetamine, and opioids in violation of 21 U.S.C. §§ 846 and 841(a)(1), to deal and manufacture firearms without a license, in violation of 18 U.S.C. § 922(a)(1), and to possess machineguns, in violation of 18 U.S.C. § 922(o).

[*Continued on the next page.*]

55. Specifically, I respectfully request authority to search:

    A.  The residence located at **2039 Tennessee St, Vallejo, California;**

    B.  The person of **Joseph Gage McCready TOMSON,** DOB: \*\*-\*\*-1990, California Driver's License #\*\*\*\*5212;

    C.  Cellular telephones **(707) 980-8104 and 510-478-4899** used by **Joseph Gage McCready TOMSON,** and any cellular telephone located on his person or under his control;

    D.  **2004 Toyota Prius, Blue, with License Plate CA 5JHS181** and all vehicles over which any owner, occupant, or resident of the premises has dominion and control, as determined by agent's observation of such person operating or accessing the vehicle; DMV records showing ownership or use of the vehicle; witness statements establishing ownership or use of the vehicle; or car keys to operate the vehicle found in the actual or constructive possession of such person.

I swear under penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information and belief.

James Bonanno, Special Agent
Drug Enforcement Administration

Sworn to and subscribed before
me on the 16th day of March 2020

HONORABLE DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

Cameron L. Desmond
Assistant U.S. Attorney

13

**Attachment A**
**Locations to be Searched**

A. The residence located at **2039 Tennessee St, Vallejo, California;** further described
as a single family, two-story residence, located on the south side of Tennessee St
facing north, tan in color with white trim, with the numerals 2039 affixed to the front
of the residence immediately to the left of the garage door, with a white metal
security door over the front door.

Including the residence, garage, all storage areas, all trash receptacles, and the entire
grounds and yard; and all vehicles over which the owner, occupant, or resident of the
aforementioned premises has dominion and control, as determined by the agents at
the time of the execution of the search warrant by agent's observation of such persons
operating or accessing the vehicle; DMV records show ownership or use of the
vehicle; witness statements establishing ownership or use of the vehicle; or car keys
to operate the vehicle found in the actual or constructive possession of such person
found at the residence.

B. The person of **Joseph Gage McCready TOMSON,** DOB: **-**-1990, California
Driver's License #****5212;

C. Cellular telephones **(707) 980-8104** and **510-478-4899** used by **Joseph Gage
McCready TOMSON**, and any cellular telephone located on his person or under his
control;

D. **2004 Toyota Prius, Blue, with License Plate CA 5JHS181** and all vehicles over
which any owner, occupant, or resident of the premises has dominion and control, as
determined by agent's observation of such person operating or accessing the vehicle;
DMV records showing ownership or use of the vehicle; witness statements
establishing ownership or use of the vehicle; or car keys to operate the vehicle found
in the actual or constructive possession of such person.

**Attachment B**
**Items to be Seized**

Agents are authorized to search and seize property that constitutes evidence, fruits, and instrumentalities of violations of the following federal statutes (the "Target Offenses"), committed by Joseph Gage McCready TOMSON and his co-conspirators:

- Title 21 U.S.C. Sections 846 and 841(a)(1) – Distribution, Possession with Intent to Distribute, and Conspiracy to Distribute and Possess with Intent to Distribute heroin, methamphetamine, and opioids.
- Title 18 U.S.C. Section 922(a)(1) – unlawful dealing and manufacture of firearms
- Title 18 U.S.C. Section 922(o) – possession of a machinegun

As further described in the Affidavit, the specific evidence, fruits, and instrumentalities of the Target Offenses for which agents may search includes:

1.   Controlled substances, including heroin, methamphetamine and opioids or items frequently used to distribute heroin, methamphetamine and opioids or items containing residue from the distribution of heroin, methamphetamine and opioids; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2.   United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase heroin, cocaine and cocaine base during this investigation;

3.   Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4.   Telephone paging devices, beepers, mobile phones, car phones, answering machines and tapes, and other communication devices which could be used to participate in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1);

5.   Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person;

11. Firearms manufacturing devices and components, including but not limited to firearms parts, drills, drill bits, files, or jigs;

12. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records; and

13. All names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the mobile telephone or on a server and associated with mobile telephones that are associated with TOMSON during execution of the warrant. This authority to search such mobile telephones includes the following within each mobile telephone:

    A. Incoming call history;
    B. Outgoing call history;
    C. Missed call history;
    D. Outgoing text messages;
    E. Incoming text messages;
    F. Draft text messages;
    G. Telephone book;

H.  Data screen or file identifying the telephone number associated with the mobile telephone searched;

I.  Data screen, file, or writing containing serial numbers or other information to identify the mobile telephone searched;

J.  Voicemail;

K.  User-entered messages (such as to-do lists);

L.  Photographs; and

M.  Any passwords used to access the electronic data described above.

AO 93  (Rev. 11/13) Search and Seizure Warrant

SEALED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of

A.  The residence located at **2039 Tennessee St, Vallejo, California;**

                                       Case No.

B.  The person of **Joseph Gage McCready TOMSON**, DOB: **-**-1990, California Driver's License #****5212;

C.  Cellular telephones assigned call numbers **(707) 980-8104** and **510-478-4899** used by **Joseph Gage McCready TOMSON**, and any cellular telephone located on his person or under his control; and

D.  **Blue 2004 Toyota Prius with License Plate CA 5JHS181**

Case No.  2:20 - SW 0249  -  DB

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

       An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

       I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

       **YOU ARE COMMANDED** to execute this warrant on or before _____March 27, 2020_____ *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

       Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

       The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐   for   30   days *(not to exceed 30)*  ☐   until, the facts justifying, the later specific date of _____ .

Date and time issued:   3-16-20 @ 9:40 am                    _____
                                                            *Judge's signature*

City and state:   Sacramento, California          Deborah Barnes, U.S. Magistrate Judge
                                                          *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____            _____
    Signature of Judge                              Date